2011 ME 104

**WITHAM FAMILY LIMITED PARTNERSHIP**

v.

**TOWN OF BAR HARBOR, et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2011.
Decided: Nov. 1, 2011.

John C. Bannon, Esq. (orally), and John B. Shumadine, Esq., Murray, Plumb & Murray, Portland, for appellant The Witham Family Limited Partnership.

William B. Devoe, Esq. (orally), P. Andrew Hamilton, Esq., and Jonathan A. Pottle, Esq., Eaton Peabody, Bangor, for appellee North–South Corp.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] The Witham Family Limited Partnership (the Partnership) appeals from a judgment of the Superior Court (Hancock County, *Cuddy, J.*) dismissing its complaint against the Town of Bar Harbor and North South Corporation. In its complaint, filed pursuant to M.R. Civ. P. 80B, the Partnership challenged two decisions of the Town's Zoning Board of Appeals in connection with North South's application to construct a hotel. The Partnership contends that the court erred in dismissing its Rule 80B complaint for lack of standing. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] In 2009, North South applied to the Bar Harbor Planning Board for a permit to construct a hotel on property abutting Partnership land. Attorney Edmond Bearor, on behalf of the Partnership, opposed the application during public hearings before the Planning Board. In March of 2010, the Planning Board denied North South's application on the single ground that it exceeded applicable ordinance height limitations; the Planning Board found that the proposed hotel complied with ordinance requirements in all other respects. *See* Bar Harbor, Me., Land Use Code § 125–21.G (May 2, 2005).

### A. North South's Appeal

[¶ 3] North South appealed the Planning Board's denial to the Bar Harbor Board of Appeals.[1] *See* Bar Harbor, Me., Land Use Code § 125–103 (Nov. 7, 2006). The Board of Appeals conducted two public hearings on North South's appeal in April of 2010; Bearor attended both hearings. The Board of Appeals invited Bearor to "participate as an appellee," noting that Bearor had "participated thoroughly before the planning board as an opponent to this project." Bearor declined by noting that he felt he "would be able to participate adequately as a member of the public"; Bearor made a five-minute statement

---

1. The Board of Appeals conducts an appellate review of a Planning Board decision. Bar Harbor, Me., Land Use Code § 125–103(D)(1)(a) (Nov. 7, 2006).

along with other members of the public, but never explicitly stated that he was there on behalf of the Partnership.

[¶ 4] By decision dated April 22, 2010, the Board of Appeals concluded that the Planning Board misinterpreted the ordinance provision relating to height requirements, reversed the Planning Board's denial, and remanded the matter to the Planning Board with instructions to issue North South's requested permit; the Planning Board issued the permit on May 19, 2010.

### B. Partnership's Appeal

[¶ 5] Between the first and second hearings on North South's appeal, the Partnership, through Bearor, filed its own appeal challenging that portion of the Planning Board's decision finding that North South's proposed project *did* conform to other criteria for obtaining a permit, namely the parking and street width requirements. The Board of Appeals precluded the Partnership from discussing the height issue in its appeal because that issue had been fully considered in the context of North South's appeal. The Board of Appeals affirmed the Planning Board's decision with regard to the Partnership's appeal.

### C. Rule 80B Appeal

[¶ 6] The Partnership then filed a Rule 80B complaint in the Superior Court challenging the Board of Appeals's decisions in both North South's appeal and in the Partnership's appeal. On North South's motion, the court dismissed the complaint on the ground that the Partnership lacked standing to seek Rule 80B review of either Board of Appeals decision. The Partnership timely appeals.

## II. DISCUSSION

[¶ 7] Standing to pursue a Rule 80B appeal from a board of appeals decision is governed by 30–A M.R.S. § 2691(3)(G) (2010): "Any party may take an appeal, within 45 days of the date of the vote on the original decision, to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B." *See Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 9, 879 A.2d 1007. A "party" within the meaning of section 2691(3)(G) is defined as one who (1) has "appeared before the board of appeals," and (2) is "able to demonstrate a particularized injury as a result of the board's action." *Sahl v. Town of York*, 2000 ME 180, ¶ 8, 760 A.2d 266 (quotation marks omitted). A party's standing to pursue a Rule 80B appeal is a matter of law we review de novo. *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 8, 2 A.3d 284.

### A. North South's Appeal

[¶ 8] The court determined that the Partnership's failure to oppose North South's appeal as party/appellee, and notwithstanding the Partnership's opposition as a member of the public, stripped the Partnership of standing to seek Rule 80B review. We disagree.

[¶ 9] We have interpreted "party" within the meaning of section 2691 to include anyone who meets the two-part test of appearance and particularized injury. *Dep't of Envtl. Prot. v. Town of Otis*, 1998 ME 214, ¶ 7, 716 A.2d 1023. We have also expressly distinguished a "party" with standing to appeal a municipal decision from a "party" pursuant to the Rules of Civil Procedure. *Pride's Corner Concerned Citizens Ass'n v. Westbrook Bd. of Zoning Appeals*, 398 A.2d 415, 417 (Me. 1979); *see also Consumers for Affordable Health Care, Inc. v. Superintendent of Ins.*, 2002 ME 158, ¶¶ 16–17, 809 A.2d 1233; *Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197, 1200–01 (Me.1989). In

short, we have "refused to define party in the 80B settings as a legal term of art, as the term is used in [the rules of procedure] because proceedings before a Board of Appeals are far less formal than a judiciary proceeding." *Norris Family Assocs.*, 2005 ME 102, ¶ 16, 879 A.2d 1007 (alteration omitted) (quotation marks omitted). "To superimpose a formal structure of appearance, withdrawal and substitution of parties upon an otherwise open proceeding seems purposeless and unrealistic" as well as contrary to legislative intent. *Pride's Corner Concerned Citizens*, 398 A.2d at 417–18.

[¶ 10]   The only disputed issue with regard to North South's appeal is therefore whether the Partnership "appeared" before the Board of Appeals as section 2691 contemplates.[2] "Appearance," for Rule 80B standing purposes, has been expansively interpreted to refer to any "participation"—formal or informal, whether personally or through an attorney[3]—in the municipal proceedings by, for example, "voic[ing] . . . concerns for traffic, noise and aesthetics," or "express[ing] opposition" at a municipal hearing; no formal appearance is necessary.[4] *Friends of Lincoln Lakes*, 2010 ME 78, ¶ 12, 2 A.3d 284; *Rowe v. City of S. Portland*, 1999 ME 81, ¶¶ 3–4, 730 A.2d 673; *Norris Family Assocs.*, 2005 ME 102, ¶ 16, 879 A.2d 1007; *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 4, 771 A.2d 371; *Cushing v. Smith*, 457 A.2d 816, 822 n. 9 (Me.1983); *Harrington v. Inhabitants of Town of Kennebunk*, 459 A.2d 557, 560 (Me.1983). *Cf. Jaeger v.*

*Sheehy*, 551 A.2d 841, 842 (Me.1988) (holding that "prehearing conversations with a member of the board" are insufficient for purposes of standing).

[¶ 11]   North South concedes that Bearor represented the Partnership during the Planning Board proceedings, but argues that Bearor's failure to specifically announce before the Board of Appeals that he was speaking on behalf of the Partnership, as opposed to for himself personally, combined with the fact that no one else purported to speak on behalf of the Partnership, establishes that the Partnership failed to participate in any manner before the Board of Appeals.

[¶ 12]   We considered a similar question in *Norris Family Associates*, in which an attorney representing an abutting landowner stated during the Board of Appeals hearings that he represented "the Norrises." 2005 ME 102, ¶ 3, 879 A.2d 1007. The Norris property was, in fact, owned by several individuals, including one Philip Jermain. *Id.* ¶ 2. Later, the developer claimed Jermain lacked standing to seek Rule 80B relief because the attorney did not purport to represent Jermain during the proceedings and Jermain himself did not appear. *Id.* ¶ 6. We disagreed, stating that, "[a]lthough the parties' participation would have been more certain had [the attorney] specifically stated that he was appearing on behalf of all of the owners of the Norris lot, it can fairly be inferred that he appeared on behalf of all of the owners." *Id.* ¶ 17.

2.  North South does not dispute the Partnership's particularized injury as an abutter in the context of North South's appeal to the Board of Appeals; the Partnership raised issues regarding traffic and parking before the Board of Appeals. *See Singal v. City of Bangor*, 440 A.2d 1048, 1051 (Me.1982) (discussing particularized injury in the form of "traffic congestion, noise, danger of fire and depreciation of surrounding property values").

3.  North South's additional contention—that Bearor's appearance as both a member of the public and on behalf of the Partnership is barred by judicial estoppel—is not persuasive.

4.  Participation before the Board of Appeals may be unnecessary when a person is deemed an "essential party" pursuant to an applicable statute. *See Dep't of Envtl. Prot. v. Town of Otis*, 1998 ME 214, ¶ 8, 716 A.2d 1023.

[¶ 13] That Bearor attended and spoke in opposition during the Board of Appeals hearings on behalf of the Partnership may be also inferred from the record: Bearor had been representing the Partnership through an entire year of Planning Board proceedings; at the hearing before the Board of Appeals, he was asked if he wanted to be given party status based on that very participation before the Planning Board; and North South's counsel stated during the Board of Appeals hearings that she was "more than happy to have Attorney Bearor join [her] at the table if he feels it's prudent to do so and if he wishes to do so." North South's reliance on the portion of the ordinance that states, "At any hearing a party may be represented by an agent or attorney . . ." is unfounded; that provision does not require an attorney to formally announce his representation at any particular time or with any particular language. Bar Harbor, Me., Land Use Code § 125–103(D)(1)(h) (Nov. 7, 2006). Because the Partnership both appeared before the Board of Appeals and will suffer a particularized injury by the Board of Appeals's decision, we conclude that the Partnership has standing to challenge the Board of Appeals's decision in North South's appeal pursuant to section 2691.

## B. Partnership's Appeal

[¶ 14] The court also determined that the Partnership's appeal challenged only the reasoning of the Planning Board's decision rather than its ultimate conclusion to deny the permit, and that such dissatisfaction with the reasoning of the Planning Board's decision does not constitute the particularized injury necessary for standing to seek Rule 80B review of that decision.[5]

[¶ 15] "[P]articularized injury occurs when a judgment or order adversely and directly affects a party's property, pecuniary, or personal rights." *Friends of Lincoln Lakes,* 2010 ME 78, ¶ 14, 2 A.3d 284 (quotation marks omitted). When the appealing party is an abutting landowner, the requirements to establish this element of aggrievement are "minimal"; an abutter need only assert a "reasonable allegation of a potential for particularized injury . . . to establish the real controversy required for adjudication in a court." *Sahl,* 2000 ME 180, ¶ 8, 760 A.2d 266 (quotation marks omitted); *see Fryeburg Water Co. v. Town of Fryeburg,* 2006 ME 31, ¶ 12, 893 A.2d 618 (requiring an abutter to show only "a relatively minor adverse consequence" (quotation marks omitted)).

[¶ 16] As the Superior Court noted, the general rule is that "a party is not aggrieved by a judgment granting the relief requested in his pleadings." *Sevigny v. Home Builders Ass'n of Me., Inc.,* 429 A.2d 197, 201 (Me.1981). There is an exception, however, when "an essential finding on which the judgment is based might otherwise prejudice the party through the use of collateral estoppel in the future proceeding." *Great Cove Boat Club v. Bureau of Pub. Lands,* 672 A.2d 91, 92 n. 1 (Me.1996) (alteration omitted) (quotation marks omitted). In *Great Cove,* for example, the trial court's finding of a constructive easement would bind the parties in future litigation. *Id.* In *Sevigny,* a party challenged a judgment that, although facially in its favor, foreclosed it from litigating whether or not a particular contract was formed. 429 A.2d at 201–02. In *Boston & Maine Corporation v. State Tax Assessor,* we considered the Tax Assessor's appeal in which a summary judgment

---

**5.** There is no dispute that the Partnership "appeared" before the Board of Appeals in its

own appeal.

ostensibly had been issued in the Tax Assessor's favor because the language of the judgment affected the manner of calculating a tax credit in all future matters. 2005 ME 114, ¶ 7 & n. 3, 884 A.2d 1165.

[¶ 17] Just as in *Sevigny, Great Cove,* and *Boston & Maine,* continuing adverse collateral consequences to the Partnership would result from its failure to challenge the basis of the Planning Board's denial of North South's permit.[6] Although the Planning Board did initially deny North South's application, had North South's subsequent appeal to the Board of Appeals been successful and had the Planning Board been ordered to issue the requested permit, collateral estoppel would have barred the Partnership from challenging the bases on which the permit was granted. This series of events was, in fact, precisely what happened in North South's appeal; by the time the Partnership's appeal was considered, the Board of Appeals had already ordered the Planning Board to issue North South's requested permit.

[¶ 18] Our decision in *Brooks v. Town of North Berwick,* 1998 ME 146, 712 A.2d 1050, is distinguishable. In *Brooks,* the Board of Appeals vacated a decision of the local code enforcement officer (CEO) on the ground that the CEO acted without authority. 1998 ME 146, ¶ 10, 712 A.2d 1050. Brooks had argued that the decision should be vacated on the alternative ground that the property in question was not grandfathered. *Id.* We held that dissatisfaction with the Planning Board's rationale was not a sufficient "particularized injury" to confer standing for appellate review. *Id.* In *Brooks,* however, there was no lasting impact on the appellant from the rationale of the Planning Board; the invalidation of the CEO's decision left no fur-

ther possibility for litigation given that the unsuccessful party had not appealed. Here, in contrast, North South's pending—and ultimately successful—appeal created a continuing opportunity for injury to the Partnership, which is all that is necessary to confer standing.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings.

---

6. North South's contention that the Partnership could, and should, have raised any bases to challenge the Planning Board's decision in the context of North South's appeal is belied by the Board of Appeals's own decision. It noted that it would consider only those bases on which the Planning Board had *denied* the requested permit.